IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Waverly Heights, Ltd.,                    :
                                          :
                    Petitioner            :
                                          :
          v.                              : No. 312 C.D. 2017
                                          : Argued:  October 17, 2017
Unemployment Compensation                 :
Board of Review,                          :
                                          :
                    Respondent            :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY JUDGE WOJCIK                           FILED:  November 13, 2017


          Waverly Heights, Ltd. (Employer) petitions for review from a final order of the Unemployment Compensation Board of Review (Board), which reversed a decision of a referee and granted unemployment compensation (UC) benefits to Kathleen M. Jungclaus (Claimant) upon determining Claimant was not ineligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] for willful misconduct based on a tweet she sent regarding the 2016 Presidential Election.  Upon review, we affirm.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

# I. Background

Employer, a continuing care retirement community, employed Claimant as its full-time Vice President of Human Resources from April 1997 until her discharge on September 27, 2016. Employer discharged Claimant for a tweet posted on her personal Twitter page on July 24, 2016, which read:

> @realDonaldTrump I am the VP of HR in a comp outside of philly an informal survey of our employees shows 100% AA employees voting Trump!

After her separation from employment, Claimant applied for UC benefits, which a local service center granted. Employer appealed, and a referee held a hearing, at which both parties testified.

At the hearing, Employer, who was represented by counsel, presented two witnesses. Claimant, who was unrepresented by counsel, testified on her own behalf. Based on the testimony and other evidence presented, the referee determined Claimant's behavior violated Employer's policy and fell below the standards of behavior Employer had the right to expect. Thus, the referee concluded Claimant was ineligible for UC benefits under Section 402(e) of the Law for willful misconduct. Claimant appealed.

On appeal, the Board reversed. Based on the record created by the referee, the Board made the following findings. Employer maintains a Social Media Policy, which provides, in relevant part:

> [Employer] has an interest in promoting and protecting its reputation[,] as well as the dignity, respect, and confidentiality of its residents, clients, and employees as depicted in social medial, whether through [Employer's] own postings or that of others. Towards that end, [Employer] will actively manage the content of its social media sites to uphold the mission and values of the

2

> company. Also, [Employer] expects employees who identify themselves with [Employer] in either internal or external social media to conduct themselves according to this policy.

Board Op., 2/21/17, Finding of Fact (F.F.) No. 2. Claimant knew of Employer's Social Media Policy. F.F. No. 3. On July 24, 2016, Claimant posted on her Twitter page: "@realDonaldTrump I am the VP of HR in a comp outside of philly an informal survey of our employees shows 100% AA employees voting Trump!" F.F. No. 4. In September 2016, Employer became aware of the post and conducted an investigation. F.F. Nos. 5, 6. Upon completion of its investigation, Employer discharged Claimant for allegedly violating its Social Media Policy by posting the tweet. F.F. No. 7.

Although Claimant claimed her husband posted the tweet, the Board rejected this testimony as not credible and found that Claimant herself posted the tweet. Board Op. at 2-3; F.F. No. 4. Notwithstanding, the Board found that the tweet did not violate Employer's policy because Claimant did not identify herself with Employer. Board Op. at 3. Although her Twitter post identifies Claimant as a vice president of human resources for a company located outside of Philadelphia, the Board concluded that such a statement is "overly-broad." *Id.* The mere fact that Claimant "follows" Employer's Twitter account is insufficient to say that she "identified" herself with Employer. *Id.* Although an individual, through additional research efforts, could determine that Claimant worked for Employer, the Board reasoned that "such is not the standard presented by [E]mployer's [S]ocial [M]edia [P]olicy." *Id.* Ultimately, the Board concluded that Employer failed to meet its burden of proving willful misconduct under Section 402(e) of the Law. Thus, the

3

Board reversed the referee's decision and awarded UC benefits to Claimant. Employer then petitioned this Court for review.[2]

## II. Issues

Employer contends that the Board erred by determining that Claimant's "racially charged" social media post, and related conduct, did not violate Employer's policies and procedures. In addition, it claims that the Board erred by failing to find that Claimant's "racially charged" social media post, and related conduct, demonstrated wanton and willful disregard for Employer's interests or defied the standards of behavior that Employer could reasonably expect from its Vice President of Human Resources.

## III. Discussion

First, Employer contends that the Board erred in concluding that Employer did not meet its burden of proving that Claimant's conduct violated its Social Media Policy. According to Employer, Claimant readily identified herself with Employer. Claimant identified herself as a vice president of human resources of a company located outside of Philadelphia. Claimant follows Employer's Twitter feed. A Google search of Claimant's name or Employer's directory would quickly link the two together. In addition, Employer asserts that the Board erred by focusing solely on its Social Media Policy and ignoring other provisions of its

_____

[2] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014).

4

Communications Policy, which it argues Claimant clearly violated by linking to Employer's website.

We begin by noting that "[t]he [Board], not the referee, is the ultimate fact finding body and arbiter of credibility in [UC] cases." *Deal v. Unemployment Compensation Board of Review*, 878 A.2d 131, 133 n. 2 (Pa. Cmwlth. 2005). "Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review." *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 n. 4 (Pa. Cmwlth. 2007). "[T]he Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief." *Stockdill v. Unemployment Compensation Board of Review*, 368 A.2d 1341, 1343 (Pa. Cmwlth. 1977). We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999).

Section 402(e) of the Law provides that an employee will be ineligible for UC benefits for any week in which her "unemployment is due to [her] discharge or temporary suspension for willful misconduct." 43 P.S. §802(e). "Whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012).

The employer bears "the burden of proving that it discharged an employee for willful misconduct." *Adams v. Unemployment Compensation Board of Review*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3)

disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014).

Where an employer seeks to deny UC benefits based on a work-rule violation, the employer must prove the existence of a work rule, the reasonableness of the rule and the employee's violation of the rule. *Maskerines v. Unemployment Compensation Board of Review*, 13 A.3d 553, 557 (Pa. Cmwlth. 2011). If the employer meets its burden, the burden then shifts to the claimant to demonstrate good cause for her actions. *Johns*, 87 A.3d at 1010.

Here, Employer terminated Claimant for violating its Social Media Policy because she represented herself as Employer's Vice President. Reproduced Record (R.R.) at 41a. Employer's policy provides, in pertinent part: "Employer expects employees *who identify themselves with Employer* in either internal or external social media to conduct themselves according to this policy." F.F. No. 2; R.R. at 55a. Claimant was aware of this policy. F.F. No. 3; Referee's Hearing, 11/28/16, Notes of Testimony (N.T.) at 11; R.R. at 39a. However, as the Board found, Claimant did not identify herself with Employer on her personal Twitter account. Board Op., at 3. Claimant merely identified herself as a vice president of human resources of an unnamed company located outside of Philadelphia. F.F. No. 4; R.R. at 80a. Although Claimant "follows" Employer's Twitter account, which means she can view any posts posted by Employer, Claimant's Twitter account is not "linked" to Employer's Twitter page or website. N.T. at 9; 22. Her personal Twitter feed did not represent the Employer. While one could investigate Claimant

6

and ultimately determine the identity of her Employer in the process, the Board reasoned such is not the standard presented by Employer's Social Media Policy. Board Op., at 3; *see* N.T. at 17. Employer's policy clearly pertained to "employees who *identify* themselves with Employer." Because Claimant did not identify Employer in her tweet or otherwise hold herself out as a representative of Employer on her personal Twitter page, the policy did not apply. Thus, the Board did not err in concluding that Claimant did not violate Employer's Social Media Policy.

Insofar as Employer now asserts that Claimant violated other provisions of its Communications Policy, Employer did not identify a violation of the Communications Policy as grounds for dismissal. *See* R.R. at 41a-51a. Employer referred expressly and only to its Social Media Policy in its separation information. *See* R.R. at 41a, 43a, 45a, 46a, 49a. Although Employer also submitted its Communication Policy into evidence, R.R. at 58a-65a, Employer did not assert a violation of its Communication Policy at the referee's hearing. *See* N.T. at 6, 15-16, 27. Thus, Employer waived the issue. *See Wing v. Unemployment Compensation Board of Review*, 436 A.2d 179, 180-81 (Pa. 1981) (issues not raised during a UC proceeding are waived).

Notwithstanding waiver of this issue, Employer failed to prove that Claimant violated its Communications Policy, which provides that employees may not "link from a personal blog or social networking site to [Employer's] internal or external website." R.R. at 63a. The Board's finding that Claimant merely "follows" Employer's Twitter account is supported by the evidence. Board Op. at 3; *see* R.R. at 22a, 29a; *see* R.R. at 77a. Employer did not prove that Claimant had a "link" to Employer's website on her social media page. Consequently, Employer would not prevail on this claim.

Next, Employer asserts that the Board erred by not finding that Claimant's "racially charged" social media post, and related conduct, demonstrated wanton and willful disregard for Employer's interests or defied the standards of behavior that Employer could reasonably expect from its Vice President of Human Resources. According to Employer, the tweet confirms that she acted inappropriately at the workplace by conducting an informal survey, in which she "singled out African-American staff and asked them their political preferences." Petitioner's Brief at 13. "Claimant, by her own admission, . . . targeted African-American employees and inquired about their political preferences. ([R.R. at] 25a; 80a)." Petitioner's Brief at 21. Employer asserts that Claimant's tweet created a question of whether she could effectively perform her job duties without regard to race and exposed Employer to the possibility of litigation by former employees and those who incurred adverse employment consequences. Employer argues that the Board erred by focusing exclusively on whether Claimant violated Employer's Social Media Policy and not on these other grounds for willful misconduct.

In a UC proceeding, we do not question an employer's decision to terminate an at-will employee. *See Conlon v. Retirement Board of Allegheny County*, 715 A.2d 528, 529 n.2 (Pa. Cmwlth. 1998) (Pennsylvania is an at-will employment state and, where there is not a contract, an employer may discharge an at-will employee "at any time, for any reason or for no reason."). The issue of whether an employer can rightfully discharge an employee is separate from, and not relevant to, the issue of whether a claimant is eligible for UC benefits. *Port Authority of Allegheny County v. Unemployment Compensation Board of Review*, 955 A.2d 1070, 1075-76 (Pa. Cmwlth. 2008).

Here, although the referee found that Claimant's conduct fell below the standards of behavior Employer had the right to expect, the Board, as the ultimate finder of fact, made no such finding. *See* F.F. No. 6. Upon review, we conclude that the Board did not err in this regard. First, the record does not support Employer's assumption that "AA" stands for "African American." Contrary to Employer's assertions, Claimant never admitted to this. *See* R.R. at 25a, 80a. The certified record contains an exhibit[3] listing various meanings for the acronym "AA," the first of which is "Alcoholics Anonymous," followed by "African Americans." R.R. at 67a. Claimant testified it stood for "Administrative Assistants." N.T. at 24.

Notwithstanding, even assuming that AA stands for "African American," the tweet did not "single out" "African-American" staff regarding their political preferences as alleged by Employer. Rather, the tweet itself refers to "an informal survey of *our employees*," not just African-American employees. R.R. at 78a (emphasis added). Employer's witness testified that Claimant asked "*employees* who they were voting for," not just African Americans. R.R. at 25a (emphasis added).

Insofar as Employer contends that the act of taking an informal survey of political preferences during work defied Employer's standards, Employer offered no proof, beyond the tweet itself, that she actually took a survey or poll of political preferences or that she did so during company time. In fact, Employer's witness testified that Claimant merely shared a conversation with her regarding political preferences, but "it wasn't necessarily that she told me she was conducting any polls, it was just a conversation that she had shared." R.R. at 25a. Mere discussions about

---

[3] Both Claimant and Employer deny that they offered this exhibit and suggested it was submitted by the UC service center. N.T. at 26-27.

current affairs, such as an upcoming Presidential Election, do not rise to a level of disqualifying willful misconduct.

Upon review, we conclude that the Board did not err in determining Employer did not meet its burden of proving disqualifying misconduct under Section 402(e) of the Law. Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Waverly Heights, Ltd., : 
                               : 
              Petitioner : 
                               : 
              v. : No. 312 C.D. 2017
                               : 
Unemployment Compensation : 
Board of Review, : 
                               : 
             Respondent : 

## O R D E R

AND NOW, this 13th day of November, 2017, the order of the Unemployment Compensation Board of Review, dated February 21, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge